IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABIRA MEDICAL LABORATORIES, LLC**, <br> *Plaintiff*, <br><br> v. <br><br> **CAREFIRST OF MARYLAND INC., ET AL.**, <br> *Defendants.* | **CIVIL ACTION** <br><br> No. 24-0917 |

<u>MEMORANDUM OPINION</u>

Henry, J.  *s/CH*                                                                                                  April 23, 2025

  Counsel for Abira Medical Laboratories should be very familiar with personal jurisdiction by now, particularly the question of whether a court may assert personal jurisdiction over an out-of-state insurer whose insureds used an in-state laboratory. By my count, Abira has filed at least thirty-six cases relying on such a theory that have been dismissed for want of personal jurisdiction over the last few years. These dismissals have been issued by at least twelve judges across the District of New Jersey and the Eastern District of Pennsylvania. In the present case, Defendant out-of-state insurers move to dismiss for, *inter alia*, want of personal jurisdiction. For the same reasons Abira has heard many times before, I grant dismissal on that ground. I additionally order a hearing at which Abira and its counsel may explain why I should not impose sanctions.

  **I. <u>BACKGROUND AND PRESENT POSTURE</u>**

  This case joins several dozen others in which Abira Medical Laboratories, LLC ("Abira") sues insurance providers alleging breach of contract and related claims. Abira, which does business as Genesis Diagnostics, is a New Jersey limited liability company with a principal place of business in Langhorne, Pennsylvania. It provides laboratory testing services to local patients referred by their healthcare providers. Defendants CareFirst of Maryland Inc. D/B/A/ Blue Cross and Blue

1

Shield of Maryland ("CareFirst") and Group Hospitalization and Medical Services, Inc. ("GHMS") are healthcare insurance providers operating out of and under the law of Maryland and Washington, D.C., respectively. Abira brought suit seeking more than $220,263 in damages from services it rendered to Defendants' insureds. It claims that Defendant insurers offered "spurious explanations—obviously created from whole cloth—to provide pretextual grounds designed to permit Defendants to either avoid paying altogether, or to substantially underpay" its claims. Second Amended Complaint ("Compl.") ¶ 3. In addition to breach of contract, Abira makes claims under breach of an implied covenant of good faith and fair dealing, estoppel based on negligent misrepresentation, and quantum meruit or unjust enrichment.

To establish these claims, Abira does not attach a contract to its complaint or quote directly from any agreements. It does attach a three-page redacted spreadsheet with approximately 100 laboratory accessions taken between September, 2016, and April, 2021. The sum of the amounts billed across all of these accessions, which were apparently billed to CareFirst as "BLUE CROSS BLUE SHIELD OF MARYLAND" or "BCBS OF MARYLAND," is $196,362. ECF 13-1.[1] Abira alleges (without further attachments or quotations) that the patients related to these accessions each executed "an assignment of benefits with respect to their original requisitions for services, thereby creating an assignment of contractual rights from the patients in favor of the Plaintiff." Compl. ¶ 13. Defendants say that they have nothing to do with these laboratory tests, nor do they have any obligation to pay their insureds *uninsured* out-of-network expenses. In response to the motion to dismiss, Abira produced a declaration by an officer at Abira regarding the nature of the laboratory testing claims and his receiving assurances by healthcare providers that the tests would be covered.

---

[1] The only attachment does not show billing to GHMS. The first filed complaint was amended to include a higher figure of $220,263, but evidently the attachment was not updated. *See* Pl's Mot. to Amend Compl., ECF 17 ¶ 3.

## II. STANDARD OF REVIEW

Personal jurisdiction is a threshold matter that must be resolved before considering the merits of the pleadings. *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229–30 (3d Cir. 2002). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). If an evidentiary hearing is not held, a plaintiff need only show a prima facie case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). While this burden is not a heavy one, a plaintiff may not "rely on the bare pleadings alone" but must provide actual proof by competent evidence rather than mere allegations. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Because I dismiss this action for lack of personal jurisdiction, I do not reach the question of whether the Complaint states a claim on which relief may be granted, and I need not rehearse the standards for that part of the motion.

## III. DISCUSSION

### A. Personal Jurisdiction

A district court may assert personal jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *see* Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute authorizes personal jurisdiction to "the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). As such, only the Due Process Clause sets the limits on this Court's exercise of personal jurisdiction. *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

"Due process requires that the defendant have 'minimum contacts' in the forum state, and that the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'" *Remick*, 238 F.3d at 255 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These contacts may be either *general* or *specific*. For general personal jurisdiction, a defendant's "continuous and systematic" contacts with the forum state give rise to personal jurisdiction, "even if the plaintiff's cause of action arises for the defendant's non-forum related activities." *Id.* For corporate defendants, these fora include "the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Here, Defendants are neither incorporated nor headquartered in Pennsylvania, and Abira makes no argument that personal jurisdiction may be established on that basis.

The focus of *specific* personal jurisdiction is on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Third Circuit has identified a three-part test for this inquiry:

> First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with 'fair play and substantial justice.'

*O'Connor*, 496 F.3d at 317 (cleaned up, citations omitted). Per the first element, a necessary condition for specific personal jurisdiction is a defendant's decision to "purposefully avail itself of the privilege of conducting activities within the forum." *Id*. While the defendant need not have physically entered the forum, there must be some "deliberate targeting of the forum," and "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id*. Thus, the "unilateral activity of another party or a third person is not an appropriate

4

consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (rejecting the location of the bank on which a check was drawn as a meaningful contact for the payee).

According to Abira, Defendants' contacts with Pennsylvania as alleged were:

> (1) Defendants' agents/representatives [*sic*] continuous and routine communications with the Plaintiff over the course of five (5) plus years; (2) the collection of patient specimens by Defendant's agents/representatives, and their voluntary decisions to forward those specimens to Genesis's facilities in Bucks County, Pennsylvania; and (3) Genesis's rendering of Laboratory Testing Services upon Defendants' patients/insureds in Bucks County, Pennsylvania over the course of five (5) plus years, combined with the submittance of claims to the Defendants in furtherance of those services.

Resp. 8. It does not appear that there are any further contacts to be found. As the Declaration of Kim Rothman accompanying Defendant's motion explains, Defendants have no physical presence in the state, including by ownership or lease or mailing address or bank account; are not licensed to conduct business in the state, and lack any appointed agent for process; and direct no advertising or solicitations for health insurance or administrative services in the state. ECF No. 20-2. Abira has not contested these declared facts.

Regardless of the formulation, Defendants cannot be said to have "purposefully directed," "purposefully availed [themselves] of," or "deliberately targeted" Pennsylvania. As another judge of this Court reasoned, finding no personal jurisdiction nearly five years ago in Abira's first (local) attempt to recover on this theory, "Courts should be careful to avoid mistaking a plaintiff's, or other individual's, contacts with the out-of-state defendant for evidence of the defendant's 'reaching out' into the forum." *Abira Med. Lab'ys, LLC v. Johns Hopkins Healthcare LLC*, No. 2:19-CV-05090-AB, 2020 WL 3791565 at *4 (E.D. Pa. July 7, 2020) (Brody, J.) (citation omitted).

5

The first alleged contact is the "continuous and routine communications with Plaintiff over the course of" more than five years. Abira does not offer any authority to suggest that merely communicative contact is sufficient for personal jurisdiction. To the contrary, the Third Circuit has held that "informational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 2004); *see also Barrett v. Catacombs Press*, 44 F.Supp. 2d 717, 729 (E.D. Pa. 1999) ("[T]elephone communications or mail sent by a defendant does not trigger personal jurisdiction if they do not show purposeful availment." (Quotation marks omitted.)). Nor can this case draw on rulings where personal jurisdiction was premised on the defendant's having solicited the contract or initiated the business relationship, sent payments to the plaintiff in the forum state, or engaged in "extensive post-sale contacts" in that state, since none of that occurred. *Vetrotex*, 75 F.3d at 152. Even mere communication is more than what happened here. Far from establishing due process contacts through (perhaps repeated and deep) informational contact, Abira itself complains of Defendants' "*failure and/or refusal to respond at all*" to its claims. Compl. ¶ 29 (emphasis mine). By its own characterization, Abira found Defendants largely unresponsive.[2] Abira's theory implies that it can send a defendant enough invoices over enough time that eventually even the defendant's silent treatment is somehow a "purposeful availment" sufficient for minimum contacts. This is far from what the Due Process

---

[2] Although in its response Abira essentially only discusses Defendants' failures to respond, its own complaint indicates that Defendants sometimes responded with "contrived and meritless reasons" to justify refusing payment, such as lacking adequate claim information, lacking coverage for services provided, and untimely filing. Compl. ¶ 17. Of course, responding to a company only with refusals to pay it would be hardly more of a contact with its state than silence.

Clause will permit. For its part, Abira cites no authority, and that reason alone would be sufficient to deny the argument. *See Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 511 n.8 (E.D. Pa. 2007); E.D. Pa. Local R. Civ. P. 7.1(c); *Abira Med. Lab'ys, LLC v. Anthem Blue Cross Blue Shield Missouri*, No. CV 23-4940, 2024 WL 1704981, at *3 (E.D. Pa. Apr. 19, 2024).

Second, Abira argues that the mere collection and forwarding of specimens by "Defendant's [*sic*] agents/representatives" were a minimum contact. Yet, Defendants here had nothing to do with the laboratory samples being sent to Abira's facility, and so they did not purposefully avail themselves of the privilege of conducting business in Pennsylvania. By Abira's own description of the facts, neither CareFirst nor GHMS were involved in this contact at all. According to the Complaint, it was third-party medical providers, not Defendants, who made the decision of where to send patient samples. ¶ 12. Even assuming that sending patient samples to a medical laboratory constitutes the "deliberate targeting" of the target's forum, this was a contact between Abira and the third-party providers, not Abira and Defendants. That is insufficient as a matter of law to make out purposeful direction. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Because that kind of unilateral activity is exactly what took place when third-party providers collected and forwarded specimens to Abira, it cannot provide a basis for personal jurisdiction.

Abira argues instead that third-party providers, by treating patients insured by Defendants, became the agents of those insurers. When these providers sent laboratory samples to Abira, it argues that it was *local providers'* contacts with Pennsylvania that subjected *Abira* to the jurisdiction of Pennsylvania's courts. Once again, Abira offers no authorities on which to consider its reading of the law, and it would be sufficient to grant the motion on that ground. Even setting

7

aside that deficiency, the Complaint lacks the kind of factual allegations necessary to infer the existence of an agency relationship. Agency is be established by: "(1) a manifestation of consent by the principal that the agent will act for it; (2) a consent to act by the agent; and (3) subjection to the control of the principal." *Staropoli v. Metropolitan Life Ins. Co.*, 465 F. Supp. 3d 501, 514 (E.D. Pa. 2020) (citation omitted). At best, Abira makes the barren allegation that Defendants' insureds signed a contract assigning benefits from the Defendants. That alone cannot suffice even at this level to make out a cognizable agency relationship. Therefore, even if personal jurisdiction can be established through an agency relationship, Abira has not alleged the latter.

The final contact Abira proposes is its own rendering of services to Defendants' insureds, "combined with the submittance of claims to the Defendants in furtherance of those services." This fails for the same reasons as the other alleged contacts. For the first part, Abira can hardly suggest—although it does—that its *own* laboratory work was somehow a minimum contact for the *Defendants*. In its argument about the putative agent theory, at least Abira proposed a way to tie them into the action. Here, Abira cannot claim that it is itself an agent of the Defendants, so how can its own operations be a minimum contact of theirs? The second part, the submission of claims, fails for the same reason as its (one-sided) communications as noted above. Finally, Abira suggests, again without authority, that these two in combination add up to a minimum contact. I agree that the case law already reviewed indicates that I should review contacts in their totality and in combination. However, I cannot find that the proposed contacts approach the minimum required by due process even taken all together.

Abira has not offered evidence that would tend to establish personal jurisdiction. Once the Defendants raised personal jurisdiction, Abira had the burden to produce competent evidence that jurisdiction is proper. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Besides

the spreadsheet showing accessions allegedly invoiced to one of the two defendants, it produced an affidavit of Abraham Miller, Abira's Vice President for Research & Development. Miller declares that he was told by unnamed healthcare providers who "confirmed" to him that patients getting laboratory testing were covered and that the providers "had the authority on behalf of Defendants to refer those patients . . ." for testing. ECF 21-1 ¶ 15. Abira claims that this evidence "demonstrates that the Defendant [*sic*] and/or its agents/representatives solicited and communicated with Plaintiff[]." Since the declaration does not once mention Defendants communicating with Abira (other than by receiving invoices), the "and/or" in that statement is doing a lot of work. Much of the rest of the declaration consists of a ventriloquized recitation of Abira's legal conclusions. The evidence provided proves nothing about Defendants' contacts with Pennsylvania. For this reason too, I find personal jurisdiction to be lacking.

### B. Transfer of Venue

Having decided that personal jurisdiction is lacking, a district court "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (applying § 1631 in context of lacking personal jurisdiction). The Third Circuit Court of Appeals has explained that "a district court that lacks personal jurisdiction must at least consider a transfer." *Id*. But "[t]he district court does . . . have broad discretion not to transfer," particularly if the parties do not identify other courts that could hear the case. *Id*. (quotation marks omitted). The court need not "investigate on its own all other courts that 'might' or 'could have' heard the case." *Id*. (citations omitted).

I do not find that it is in the interest of justice to transfer. The parties have not requested it, nor have they engaged in discovery or significant briefing. Abira has not raised any concern that its claims might become time-barred if the case were dismissed for lack of personal jurisdiction

9

rather than transferred. Because the Court is unaware of what interests and intentions might have led the parties not to seek transfer, the case shall be dismissed without prejudice. *See Abira Medical Lab'ys v. CoreSource, Inc.*, Civ. No. 23-03777 (GC) (TJB), 2024 WL 3964293 (D.N.J. Aug. 28, 2024).

### C. The Unnecessary Re-litigation of This Issue

I have given my opinion for my ruling on the motion to dismiss for want of personal jurisdiction, but hardly any of this analysis is original. I do not mean that in the sense that case law proceeds mostly by the careful reading and repeating of maxims and quotations. I mean that Abira has functionally litigated these exact claims and arguments dozens of times before, without success or any hope thereof.

By my count, as of this writing, Abira has contended with nearly identical arguments as to lacking personal jurisdiction over out-of-state insurers in thirty-six prior cases in which decisions have issued. I include a selection of the decisions ruling against personal jurisdiction in the margin.[3] Abira has litigated these claims relying on a small group of attorneys who have repeatedly

---

[3] *E.g. Abira Med. Lab'ys v. Johns Hopkins Healthcare LLC*, No. 2:19-cv-05090-AB, 2020 WL 3791565 (E.D. Pa. July 7, 2020) (Brody, J.); *Abira Med. Lab'ys v. Humana, Inc.*, Civ. No. 22-06190 (KM) (JRA), (D.N.J. April 24, 2023) (McNulty, J.); *Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 22-CV-6408, 2023 WL 4074081 (D.N.J. June 16, 2023) (Padin, J.); *Abira Med. Lab'ys LLC v. Molina Healthcare of Fla., Inc.*, No. CV 24-506, 2024 WL 1182855 (E.D. Pa. Mar. 19, 2024) (Younge, J.); *Abira Med. Lab'ys, LLC v. AvMed Inc.*, No. CV 23-5185, 2024 WL 1651678 (E.D. Pa. Mar. 20, 2024) (Diamond, J.), *Abira Med. Lab'ys, LLC v. Vantage Health Plans, Inc.*, No. CV 24-412, 2024 WL 1468332 (E.D. Pa. Apr. 4, 2024) (Younge, J.); *Abira Med. Lab'ys, LLC v. Anthem Blue Cross Blue Shield Missouri*, No. CV 23-4940, 2024 WL 1704981 (E.D. Pa. Apr. 19, 2024) (Beetlestone, J.); *Abira Med. Lab'ys, LLC v. IntegraNet Physician Res., Inc.*, No. CV 23-03849 (GC) (TJB), 2024 WL 1905754 (D.N.J. Apr. 30, 2024) (Castner, J.); *Abira Med. Lab'ys, LLC v. Anthem Health Plans of Virginia, Inc.*, No. CV 23-4896, 2024 WL 3015521 (E.D. Pa. June 14, 2024) (Murphy, J.); *Abira Med. Lab'ys v. Community Ins. Co.*, 2:23-cv-04856-MSG, ECF No. 26 (E.D. Pa. July 23, 2024) (Goldberg, C.J.); *Abira Med. Lab'ys, LLC v. Centene Corp.*, No. CV 23-5057, 2024 WL 3792224 (E.D. Pa. Aug. 13, 2024) (Sanchez, J.) (granting dismissal for want of personal jurisdiction as to the only party who raised it); *Abira Med. Lab'ys, LLC v. Blue Cross Blue Shield of Mississippi*, No. CV 23-4974, 2024 WL

10

filed the complaints and responses to motions to dismiss, including Plaintiff's counsel here, who have appeared together and separately across several cases. And Abira has litigated several of these cases, including the present case, while being reminded in Defendants' filings of its numerous and increasing failures on this issue. *E.g.* Defs' Memo, ECF 20-1 at 2 ("There have been no less than **twelve** decisions issue in the Third Circuit within the past three months alone . . .") (emphasis in original).

How should I understand Abira's filing in that context? Perhaps Abira has recognized that each district judge may dismiss her fellow district judges' rulings as merely persuasive authority. Yet, that ignores the fact that these rulings were all based on substantial and unavoidable mandatory authority from higher courts. It also hardly explains Abira's similar filings in the *twenty-two cases* put before Judge Castner. Perhaps Abira felt that these rulings were each incorrect understandings of the case law, but that would not explain its reluctance to offer its own reading of case law, e.g., by citations to better or analogous judgments. Perhaps Abira felt that the case law was itself mistaken and sought to overturn it, but that would not explain why it has never appealed the dismissals. Perhaps counsel was innocently unaware of the Defendants' amenability to personal jurisdiction in Pennsylvania prior to filing its suit. Yet, after suing so many healthcare insurers,

---

3783574 (E.D. Pa. Aug. 13, 2024) (Slomsky, J.); *Abria Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc.*, No. CV 24-158, 2024 WL 4173781 (E.D. Pa. Sept. 12, 2024) (Baylson, J.) (granting dismissal for want of personal jurisdiction as to the party that raised it); *Abira Med. Lab'ys, LLC v. Peach State Health Plan, Inc.*, No. CV 23-5065, 2024 WL 4466676 (E.D. Pa. Oct. 9, 2024) (Savage, J.) (granting dismissal for want of personal jurisdiction as to the party that raised it).

    This is not a complete list. It does not include 21 other decisions by Judge Castner in the District of New Jersey, or *Freedom Life*, discussed *infra* n.4. It does include some cases in which personal jurisdiction was wanting but the court chose to transfer venue in the interest of justice. Notably, although the personal jurisdiction aspect is nearly identical across these decisions, some cases included separate issues. Finally, I note that Abira has properly filed other cases against defendants that do *not* include personal jurisdiction problems, and which are not listed here.

11

surely it must have had an idea that these two Defendants were likewise bound to their own geographies. It could have checked to see whether either had a Certificate of Authority, which is a license to do insurance business in Pennsylvania.[4] In any event, Abira did not move for jurisdictional discovery or an evidentiary hearing. It did not produce any affidavits or other competent evidence to prove jurisdiction is proper—nor, having failed to collect any evidence that might be used, did it elect to concede that it could not carry its burden.

I cannot adequately explain Abira's conduct in pursuing this case (and so many others) lacking personal jurisdiction over the defendants, while barely arguing or proving otherwise—at least not without reference to impermissible tactics. That is why I prefer to hear from Plaintiff's counsel itself why I should not order sanctions. *See* Fed. R. Civ. P. 11(b)(2) (requiring certification by counsel that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"); 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991) (inherent power of court to sanction both attorneys and litigants upon finding of bad faith).

---

[4] Abira has explored whether an out-of-state insurer may be amenable to personal jurisdiction where the insurer had obtained a Certificate of Authority, i.e. a license to do insurance business, in Pennsylvania. The issue was recently lost in *Abira Med. Lab'ys v. Freedom Life Ins. Co. of Am.*, Civ. Action 24-2110, 2025 WL 66687 (E.D. Pa. Jan. 10, 2025) (Slomsky, J.). Abira's own corporate counsel was aware of the existence of Certificates of Authority and the argument therefrom since at least 2021, when it included the argument in a response to a motion to dismiss. *Abira Med. Lab'ys v. CNA Financial Corporation*, No. 2:20-CV-06412, ECF No. 9, 2021 WL 1762022 (E.D. Pa. Jan. 9, 2021.)

## IV. **CONCLUSION**

For the above reasons, the Court lacks personal jurisdiction over either named Defendant, so I must grant the named Defendants' motion to dismiss as to Rule 12(b)(2). I do not reach the same motion's merits as to dismissal for failure to state a claim under Rule 12(b)(6). In addition, I dismiss the case as it pertains to the fictitiously-named defendants ABC Companies 1–100 and John Does 1–100. Finally, I will schedule a hearing at which Abira and its counsel may explain why I should not impose sanctions.